# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| NALAKEIO BENNETT, | ) | No. 3:21-cv-00550-RLM-MGG |
| KWIN BOES, | ) | No. 3:21-cv-00666-RLM-MGG |
| CURTIS CARTER, | ) | No. 3:21-cv-00847-RLM-MGG |
| THEOTHUS CARTER, | ) | No. 3:21-cv-00702-RLM-MGG |
| DE'SHAY HACKNER, | ) | No. 3:21-cv-00618-RLM-MGG |
| ISAAC LUKES, | ) | No. 3:21-cv-00601-RLM-MGG |
| CALVIN LYONS, | ) | No. 3:21-cv-00639-RLM-MGG |
| CHARLES LYONS, | ) | No. 3:21-cv-00477-RLM-MGG |
| LATROY MAXWELL, | ) | No. 3:21-cv-00551-RLM-MGG |
| TREVOR O'NEAL, | ) | No. 3:21-cv-00560-RLM-MGG |
| BRANDON OWEN, | ) | No. 3:21-cv-00765-RLM-MGG |
| MUSTAFA NUR, | ) | No. 3:21-cv-00764-RLM-MGG |
| ANTHONY PARISH, | ) | No. 3:21-cv-00475-RLM-MGG |
| GERALD REED, | ) | No. 3:21-cv-00478-RLM-MGG |
| CHARLES RODGERS, | ) | No. 3:21-cv-00552-RLM-MGG |
| EVAN ROLLINS, | ) | No. 3:21-cv-00767-RLM-MGG |
| EVAN SAPP, | ) | No. 3:21-cv-00768-RLM-MGG |
| DUSTIN SULLIVAN, | ) | No. 3:21-cv-00640-RLM-MGG |
| JEFFREY WAGNER, | ) | No. 3:21-cv-00479-RLM-MGG |
| CAMERON WERDEN, | ) | No. 3:21-cv-00846-RLM-MGG |
| CURTIS CARTER | ) | No. 3:21-cv-00847-RLM-MGG |
| DOMINIQUE BRISKER | ) | No. 3:21-cv-00882-RLM-MGG |
| JOSEPH CAMPBELL | ) | No. 3:21-cv-00943-RLM-MGG |
| JOE E. JACKSON, JR. | ) | No. 3:22-cv-00001-RLM-MGG |
| VINCENT L. THOMPSON | ) | No. 3:22-cv-00040-RLM-MGG |
| JEREMY A. WINNERS | ) | No. 3:22-cv-00135-RLM-MGG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN WILLIAM HYATTE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is a Motion for Protective Order and Modification of Subpoena filed by Defendants William Hyatte and George Payne, Jr. in *Blanchard v. Hyatte et al.*, No. 3:21-cv-00160-RLM-MGG, which primarily pertains to discovery sought by the Plaintiffs in the above-captioned actions after Defendants raised an exhaustion defense. For the reasons stated below, Defendants' instant Motion is **GRANTED IN PART** and **DENIED IN PART**. [DE 54 in *Blanchard v. Hyatte et al.*, No. 3:21-cv-00160-RLM-MGG].

I.    BACKGROUND

Approximately thirty inmates, through counsel from the American Civil Liberties Union ("ACLU"), have filed actions pursuant to 42 U.S.C. § 1983 alleging unconstitutional conditions in the restrictive housing unit at Miami Correctional Facility ("Miami") in Bunker Hill, Indiana. On November 16, 2021, the Court consolidated these matters for purposes of discovery and all pretrial, nondispositive matters and established a schedule for the parties to brief any dispositive motions alleging that the Plaintiffs failed to exhaust available grievance remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Accordingly, Defendants were directed to file any dispositive motion regarding exhaustion of grievance remedies in these cases within 42 days of the Court's order or Defendants' answer, whichever was later, and Plaintiffs were then afforded 60 days to conduct discovery relating to Defendants' exhaustion defense and to file a response. [*See* DE 40 in *Blanchard v. Hyatte et al.*, No. 3:21-cv-00160-RLM-MGG].

Defendants, through counsel from the Office of the Indiana Attorney General ("OAG"), have now filed dispositive motions contending that the Plaintiffs failed to exhaust their available grievance remedies in all but four of these thirty cases.[1] Notably, three of the four cases with no exhaustion defense involve Plaintiffs who are no longer incarcerated. In accordance with the Court's consolidation order, Plaintiffs propounded the following discovery requests regarding Defendants' exhaustion defense: (1) deposition notices under Federal Rule of Civil Procedure 30(b)(6) to the Commissioner of the Indiana Department of Correction ("DOC") and to the Ombudsman of the DOC Ombudsman Bureau; (2) a request for production of documents ("RFP") to the DOC pursuant to Federal Rule of Civil Procedure 34; and (3) a subpoena to the DOC Ombudsman under Federal Rule of Civil Procedure 45.

Defendants have objected to these requests, contending that much of the information sought by Plaintiffs is irrelevant in that it is beyond the scope of the instant cases or otherwise consists of premature merits-based discovery. Defendants also object to this discovery contending that it seeks correspondence and communications with the DOC Ombudsman that are considered privileged under Indiana law. The parties met and conferred via telephone regarding the subject matter of these discovery requests on February 25, 2022, and exchanged further written correspondence, but failed to reach an

---

[1] Defendants agree that they will not file an exhaustion defense in *Blanchard v. Hyatte*, No. 3:21-cv-00160-RLM-MGG, where plaintiff is still incarcerated. Moreover, the parties agree that because the plaintiffs in *Priscal v. Hyatte*, No. 3:22-cv-000165-RLM-MGG, and *Anderson v. Hyatte*, No. 3:22-cv-00286-RLM-MGG, were no longer incarcerated when their actions were filed, the requirement to exhaust administrative remedies no longer applies. Another case, *Pryor v. Hyatte*, 3:22-cv-00582-RLM-MGG, filed on July 25, 2022, also involves a plaintiff who is no longer incarcerated.

agreement regarding the scope of discovery for these cases. [*See* DE 56 in *Blanchard v. Hyatte et al.*, No. 3:21-cv-00160-RLM-MGG].

Thus, on February 25, 2022, Defendants filed the instant Motion for Protective Order and Modification of Subpoena pursuant to Rule 26(c) and Rule 45(d).[2] Plaintiffs filed their response on February 28, 2022. The motion became ripe on March 7, 2022, when Defendants filed their reply. With this motion pending, the Court granted the Plaintiffs' motion for extension of time to respond to Defendants' Motions for Summary Judgment, extending the deadline for Plaintiffs to respond to these dispositive motions to thirty days from the date of the Court's order on Defendants' instant motion.

## II.   LEGAL STANDARD AND APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." During discovery, relevancy under Fed. R. Civ. P. 26(b)(1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  When a discovery request is facially relevant, the party opposing the request is burdened with establishing lack of relevance or that "the likelihood of discovering relevant evidence is so minimal that the potential harm

---

[2] Defendants filed another Motion for Protective Order on March 7, 2022, seeking a protective order pertaining to some of the discovery sought for Plaintiff Jeremy Blanchard (and, accordingly, the other plaintiffs where no exhaustion defense has been raised). The Court will address this motion via separate order.

occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Close Armstrong LLC v. Trunkline Gas Co., LLC,* No. 3:18-CV-270-PPS-MGG, 2021 WL 1207592, at *2 (N.D. Ind. Mar. 31, 2021). In doing so, it is not sufficient to repeat the "reflexive invocation . . . that the requested discovery . . . is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Cunningham v. Smithkline Beecham,* 255 F.R.D. 474, 478 (N.D. Ind. 2009)). Rather, the objecting party must show, with specificity, that the request is improper. *Close Armstrong LLC,* 2021 WL 1207592, at *1 (citing Graham v. Casey's Gen. Stores, 206 F.R.D. 251, 254, 2002 WL 416949 (S.D. Ind. 2002)). However, if relevance is not apparent, the requesting party must show the relevancy of the request. *Id.* In the end, "[i]f relevance is in doubt, courts should err on the side of permissive discovery." *Axis Ins. Co. v. Am. Specialty Ins. & Risk Servs., Inc.,* No. 119CV00165DRLSLC, 2021 WL 2910814, at *10 (N.D. Ind. July 12, 2021), *aff'd,* 340 F.R.D. 570 (N.D. Ind. 2021).

Yet "relevance alone does not translate into automatic discoverability . . . . An assessment of proportionality is essential." *Id.* at *3 (internal citation omitted). Proportionality is determined by considering "the importance of the issues at stake in the litigation, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Determining "[p]roportionality, like other concepts, requires a common sense and experiential assessment." *Todd v. Ocwen Loan Servicing, Inc.,* No. 219CV00085JMSDLP, 2020 WL 1328640, at *3 (S.D. Ind. Jan. 30, 2020).

Information within this scope of discovery does not need to be admissible to be discoverable. *See* Fed. R. Civ. P. 26(b)(1).

A court must limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative . . .," or if it is outside the scope permitted by Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2). The Court may limit discovery under Rule 26(b) either by motion or on its own. *See id.* A protective order may also issue if discovery does not meet the scope of Rule 26(b). *See* Fed. R. Civ. P. 26(b) advisory committee note to 1983 amendment (stating "[t]he grounds mentioned in the amended rule for limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c) . . . ."). *See also Trupp v. Roche Diagnostics Corp.*, No. 118CV02587SEBDLP, 2019 WL 2250584 (S.D. Ind. May 24, 2019) ("A court may issue a protective order, on motion or its own initiative, to limit discovery if it is outside the scope permitted by Rule 26(b)(1)."); *see also Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 309 (S.D. Ind. 2016) ("Simply put, this court does not doubt it can issue a protective order as a means of enforcing the scope of discovery and its limit expressed in Rule 26(b).").

Moreover, even if discovery meets the scope of Rule 26(b)(1), the court may also enter a protective order "for good cause shown . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding inquiry into certain matters." *See* Fed. R. Civ. P. 26(c). "The burden to show good cause is on the party seeking the order." *Autotech Techs. L.P. v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D. Ill., 2006) (citing *Jepson, Inc. v. Makita*

6

*Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)). "In the context of a motion for protective order, as in all others, the *ipse dixit* of counsel will not suffice." *Autotech Techs.*, 235 F.R.D. at 440. Finally, the Court has broad discretion regarding discovery matters and must "independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996)

Here, Defendants filed the instant Motion due to discovery sought by the Plaintiffs in response to Defendants' affirmative defense contending that Plaintiffs failed to properly exhaust available grievance remedies. The applicable substantive law regarding Defendants' exhaustion defense is the PLRA, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Moreover, "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Id.* at 1023.

Notably, however, the PLRA only requires exhaustion of remedies that are considered available. Accordingly, inmates can be excused from failing to exhaust

grievance remedies if the grievance process was effectively unavailable to them. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal citations omitted).

There are various circumstances in which a grievance process may be considered unavailable for purposes of the PLRA's exhaustion requirements. First, a grievance procedure may be considered unavailable when (despite what prison regulations or materials state) the procedure is a dead end—with prison officials unable or consistently unwilling to provide relief to inmates. *Id.* at 643; *see, e.g., Dole,* 438 F.3d at 809 (grievance remedies considered unavailable when prison officials failed to respond to a properly filed grievance). Grievance remedies may also be considered unavailable when "affirmative misconduct" prevents an inmate from pursuing the remedies, such as through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644; *see, e.g., Thomas v. Reese*, 787 F.3d 845, 847-58 (remedies considered unavailable when prison official tells inmate that inmate cannot file a grievance when inmate may do so); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (remedies considered unavailable when prison personnel prevented inmate's access to grievance forms). Finally, grievance remedies can be considered unavailable when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use." *Ross*, 578 U.S. at 643-44 (internal citations omitted); *see also Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 834-35 (7th Cir. 2020) (finding grievance process was not available if prison officials "ma[d]e

up new exhaustion rules for each individual inmate" and when they "move[d] the goal posts while [the plaintiff] was in the middle of his case").

## III.   DISCUSSION

Defendants have moved for summary judgment in the above-captioned cases contending that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law because (1) a grievance procedure was available at Miami, and (2) Miami either has no record of the Plaintiffs filing a grievance or, if there is a record of a filed grievance, there is no record that these Plaintiffs appealed the grievance denial as required by Miami's grievance process. The parties appear to agree that the exhaustion defense centers on two primary inquiries: whether the grievance process at Miami was available, and whether the Plaintiffs exhausted this process. Yet the parties have vastly different positions as to what is relevant within this framework.

Defendants' general position is that any discovery sought that pertains to grievances at other prisons or to grievances filed by nonparties incarcerated at Miami is outside the scope of these cases. [DE 55 at 3]. Plaintiffs, however, contend that the discovery sought is relevant because it will show: 1) that the grievance system at Miami is dysfunctional, both on its own and as compared to other DOC facilities; and 2) that the Plaintiffs attempted to file grievances but were thwarted, either because Plaintiffs had to wait to receive a form to file a grievance appeal or because they were erroneously told that they could not appeal a grievance until they received a denial and appeal forms. Accordingly, in addition to the Plaintiffs' own attestations as to the steps they took to attempt to exhaust their grievance remedies, Plaintiffs contend that these

discovery requests seek information to show this alleged dysfunction and to present additional evidence supporting that Plaintiffs were thwarted in their attempts to exhaust their grievance remedies.

### A.   Plaintiff's Discovery Requests to the DOC

Plaintiffs issued a 30(b)(6) deposition notice to the DOC Commissioner and a request for production of documents under Rule 34. Under Rule 30(b)(6), a deposition notice directed to an organization "must describe with reasonable particularity the matters for examination." Rule 30(b)(6) deposition topics must be within the scope permitted by Rule 26(b) and may be subject to a protective order under Rule 26(c)(1) upon a showing of good cause. *See, e.g.*, *Ball Corp. v. Air Tech of Michigan, Inc.,* 329 F.R.D. 599, 602 (N.D. Ind. 2019). Likewise, RFPs under Rule 34 are also subject to Rule 26(b)and (c). *See* *Smith v. Nexus RVs, LLC,* 331 F.R.D. 491 (N.D. Ind. 2019).

Here, Plaintiffs' deposition notice included nine topics for examination. Defendants indicate that while they have no objection to topics 7, 8, and 9, Defendants do object to topics 1-6. Likewise, Plaintiffs' RFP sought seven categories of documents corresponding to these deposition topics. Defendants do not object to RFP categories 2-6, but they do object to category 1 as it seeks documents that correspond to the information sought in deposition topic 6.

### 1.   Deposition Topics Nos. 2, 3, and 6; RFP No. 1

Defendants first object to Plaintiffs' DOC deposition topics 2, 3, and 6, as well as to RFP 1. These requests primarily seek information pertaining to grievances filed by inmates at Miami, specifically:

**Deposition Topic 2:** "For the period from May 1, 2020, to June 1, 2021, the number of grievances, grievance appeals, and department offender grievance manager appeals (separated by type), submitted by: a. prisoners confined in A-block, restrictive housing at Miami Correctional Facility; b. prisoners confined in other restrictive housing units at Miami Correctional Facility, with each unit designated separately; [and] c. prisoners confined in general population at Miami Correctional Facility."

**Deposition Topic 3:** "The capacity of each prisoner living unit specified in 2a, 2b, and 2c, above for the time designated and the average population of each block for the time noted."

**Deposition Topic 6:** "Since January 1, 2020, how many grievance appeals have been a. submitted; b. accepted and processed as valid; at the Miami Correctional Facility where the appeal was submitted after the prisoner failed to receive a grievance response within 20 days of the Offender Grievance Specialist's receipt of the grievance and the prisoner appealed the matter as if the grievance had been denied."

**RFP No. 1:** "[a]ll grievance appeals submitted or accepted as valid since January 1, 2020, at the Miami Correctional Facility where the appeal was submitted after the prisoner failed to receive a grievance response within 20 days of the Offender Grievance Specialist's receipt of the grievance and the prisoner appealed the matter as if the grievance had been denied."

Defendants effectively contend that any discovery beyond Plaintiffs' actions in exhausting their grievance remedies for the allegations raised in their complaints is not relevant. Specifically, as to these requests, Defendants contend that the "proclivity of non-party prisoners to file and appeal grievances is not relevant" and whether non-party inmates elected to utilize the grievance procedure and complied with the grievance procedures is not relevant. [DE 55 at 3, 4]. Likewise, as to topic 3, Defendants contend that the statistical information sought "has nothing to do with the Plaintiffs' failure to exhaust their administrative remedies" and, moreover, has nothing to do with "the constitutionality of the Plaintiffs' conditions of confinement."

However, in response, Plaintiffs explain how the information sought is relevant to Defendants' exhaustion defense. Specifically, Plaintiffs contend the information sought in topics 2 and 6 is relevant because it may show whether inmates in other areas of the prison were routinely filing grievances and having them processed, as well as what inmates were told when their grievances were denied, which would support Plaintiffs' contentions that they filed grievances while in restrictive housing that were not processed or that Plaintiffs were told incorrect information regarding grievance denials. Moreover, as to topic 3, Plaintiffs explain that this information is relevant because it provides necessary context to the information sought in topic 2.

Plaintiffs' arguments regarding the information sought in these requests are within the circumstances contemplated by courts when considering availability. *See Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006). ("In addition, there is an important temporal element: while administrative process may have been available at the beginning of [the inmate's] tenure at [the institution], he claims that it became progressively less available with each incident detailed, until at some point . . . it became actually unavailable.") Moreover, the information sought in topic 6 is important to show whether the plaintiffs were told information that contradicts DOC's grievance procedure. *See Thomas v. Reese*, 787 F.3d 845, 847-58 (remedies considered unavailable when prison official tells inmate that inmate cannot file a grievance when inmate may in fact do so).

On reply, Defendants continue to contend, without further explanation, that the instant requests are not relevant. For instance, Defendants argue that "perhaps" inmates

who are not in restrictive housing may have more occasion to file a grievance (due to their ability to interact with more staff or participate in elements of prison life), or that they may have less occasion to file certain grievances (as other cells at Miami may have more pleasant conditions). It is true that the information obtained through these requests may end up weakening—or even disproving—Plaintiffs' arguments that grievance remedies were unavailable to them while they were placed in the restrictive housing cells.  But in making these arguments, however, Defendants fail to provide more than this "reflexive invocation" that this discovery is not relevant. *Close Armstrong LLC*, 2021 WL 1207592, at *2. Notably, Defendants' arguments also appear to only address the second portion of the inquiry—whether Plaintiffs exhausted the process— and fail to recognize that the inquiry must also consider whether the grievance process at Miami was available, especially considering that Defendants have raised this exhaustion defense for 26 Plaintiffs alleging common facts in both their complaints and regarding their attempts to exhaust grievance remedies.

The inquiry does not end at relevance, however—"[a]n assessment of proportionality is essential." *Axis Ins. Co.*, 2021 WL 2910814, at *3. Proportionality is determined by considering "the importance of the issues at stake in the litigation, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1).

In the instant actions, Plaintiffs allege they were subjected to inhumane conditions while in restrictive housing cells. In response to the exhaustion defenses raised, these 26 Plaintiffs also contend that when they attempted to file grievances regarding these conditions, they were thwarted as part of a dysfunctional grievance process. Moreover, the DOC is presumably the only agency with access to the requested information, and Defendants have not otherwise stated that it lacks the resources to respond to these requests or that these requests are an undue burden or expense. Notably, the information sought in these requests is also important to resolve the issue of availability. First, as explained by Plaintiffs, topics 2 and 3 may corroborate Plaintiffs' contention that grievances filed by inmates in various housing units are treated differently such that the grievance process may have become unavailable to the plaintiffs once they were placed in restrictive housing. This is of further significance to many Plaintiffs considering that many of Defendants' dispositive motions include or reference other grievances filed by Plaintiffs to show that Miami had an available grievance system, and that Plaintiffs knew how to use it.

It is true that discovery pertaining to grievances filed by non-parties may not be proportional to an exhaustion defense raised in an individual case. However, here, the Court must acknowledge that the discovery sought pertains to consolidated actions alleging common issues of fact and law, and that Defendants have raised exhaustion defenses for nearly every Plaintiff who is still incarcerated. A commonsense assessment of the needs of 26 Plaintiffs alleging that the grievance process was unavailable to them while they were in restrictive housing cells demonstrates that additional discovery

regarding the grievance system at Miami is proportional to the Plaintiffs' needs in these cases. *Ocwen Loan Servicing, Inc.*, 2020 WL 1328640, at *3.

Finally, Defendants have made no argument that providing the information sought in deposition topics 2, 3, and 6, and RFP No. 1 will cause "annoyance, embarrassment, oppression, or undue burden or expense" such that there is good cause for a protective order under Rule 26(c). Fed. R. Civ. P. 26(c). Accordingly, Defendants' Motion for Protective Order is **DENIED** as to DOC deposition topics 2, 3, and 6 and RFP no. 1.

### 2. Deposition Topics 1, 4, and 5

Defendants also object to Plaintiffs' DOC deposition topics 1, 4, and 5 which seek information pertaining to grievance procedures and grievances filed at other DOC facilities. Topic 1 seeks information regarding grievance procedures within the DOC generally, while Topics 4 and 5 seek statistical information about grievances filed at the Indiana State Prison:

> **Topic 1:** "The grievance process for prisoners within the Indiana Department of Correction in 2020 and 2021 including: (a) [a]ll forms utilized at all levels of the process; [b] [t]he methods by which prisoners received the forms and returned them in 2020 and 2021 if the prisoners were in general population [or] in restrictive housing; (c) All institutions (by name) where, in 2020 and 2021 the Offender Grievance Response Report that allows the prisoner to check whether he or she agrees or disagrees with the response was accompanied by State From 45473, 'the Grievance Appeal' [or] the Offender Grievance Response Report that allows the prisoner to check whether he or she agrees or disagrees with the response was not accompanied by State From 45473, 'the Grievance Appeal.'"
>
> **Topic 4:** "For the period from May 1, 2020 to June 1, 2021, the number of grievances, grievance appeals, and department offender grievance

manager appeals (separated by type), submitted by:  a. prisoners confined
in restrictive housing units at the Indiana State Prison [and] b. prisoners
confined in general population at the Indiana State Prison."

**Topic 5:** "For the period from May 1, 2020 to June 1, 2021, the total
capacity and the average population of the: a. restrictive housing units at
the Indiana State Prison [and] b. general population units at the Indiana
State Prison."

Defendants contend that these topics should be limited to only the grievance
process and forms at Miami, and that the grievance process at other DOC facilities or
grievances filed by non-party inmates at other facilities is "outside the scope of these
cases." [DE 55 at 3]. Plaintiffs, however, contend that they have a right to discover
whether Miami's grievance procedure was different than that of other DOC facilities,
which could show that plaintiffs were required to take extraordinary measures to
exhaust grievance remedies and that the grievance system at Miami was dysfunctional
in comparison to other facilities. On this point, Plaintiffs specifically contend that this
discovery will help show that at Miami, inmates allegedly do not receive the grievance
appeal form at the time an inmate receives a grievance response; rather, an inmate must
wait for the form to be delivered later, which can cause timeliness issues.

On its face, the relevance of grievances at other DOC facilities is not readily
apparent. Exhaustion of grievance remedies under the PLRA concerns whether an
institution has an available grievance process and whether inmates exhaust that
process. Courts have routinely referred to the grievance process as one that is within a
specific institution. *See Frederickson v. Landeros*, 943 F.3d 1054, 1065 (7th Cir. 2019)
(stating that the PLRA requires that prisoners "exhaust intra-prison administrative

16

remedies"); *see also McCoy v. Gilbert*, 270 F.3d 503, 4011 (7th Cir. 2001) (stating that the court must consider "whether the institution has an internal administrative process . . ."). However, Plaintiffs have explained how this discovery may support their theory of comparative dysfunction in the grievance process at Miami. "If relevance is in doubt, courts should err on the side of permissive discovery." *Axis Ins. Co. v. Am. Specialty Ins.*, 2021 WL 2910814, at *10

Yet even erring on the side of permissive discovery, the Court must still assess the proportionality of these requests. In considering proportionality, the Court must consider "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). It is true that information obtained through these requests may help support Plaintiffs' theory that the grievance procedure at Miami was dysfunctional in comparison to other facilities. However, Plaintiffs need not show such comparative dysfunction to otherwise demonstrate unavailability. Furthermore, in determining whether a grievance process was available to inmates, courts often look to internal circumstances — typically, actions or omissions by prison staff. *Ross*, 578 U.S. at 643-44. Here, these discovery requests seek information regarding a different institution with different inmates who, in turn, interact with different prison staff as part of the grievance process. Accordingly, the Court cannot find that the importance of this information is proportional to Plaintiffs' needs in resolving the exhaustion defense. *See* Fed. R. Civ. P. 26(b)(1).

Based on the foregoing, Defendants' Motion for Protective Order is **GRANTED** as to topics 1, 4, and 5.

### B.    Plaintiffs' Discovery Requests to the DOC Ombudsman

Plaintiffs also issued a 30(b)(6) deposition notice to the DOC Ombudsman

Bureau and a subpoena to produce certain documents in accordance with Rule 45. The

DOC Ombudsman Bureau is separate from the DOC, and its duties are defined by

Indiana state statute. *See* Ind. Code §§ 4-13-1.2-1 to 9.

Federal Rule of Civil Procedure 45(a) permits the issuance of subpoenas to

command nonparties to attend a deposition or to produce "documents, electronically

stored information, or tangible things in that person's possession, custody, or control . . .

." Fed. R. Civ. P. 45(a)(1). Rule 45 further provides that, "[o]n timely motion, the court

for the district where compliance is required must quash or modify a subpoena that . . ..

(iii) requires disclosure of privileged or other protected matter . . .; or (iv) subjects a

person to undue burden." Fed. R. Civ. P. 45(d)(3). The limits of discovery prescribed in

Rule 26 likewise apply to a non-party subpoena under Rule 45. *See*  Fed. R. Civ. P. 45,

Advis. Comm. Notes for 1991 Amendments ("The non-party witness is subject to the

same scope of discovery under this rule as that person would be as a party to whom a

request is addressed pursuant to Rule 34"). A person subject to a subpoena may file a

motion to quash or modify a subpoena in a "court for the district where compliance is

required." Fed. R. Civ. P. 45(d)(3).

Plaintiff's discovery requests to the DOC Ombudsman, a non-party, present two

procedural issues that must be addressed prior to considering the merits of Defendants'

instant motion. First, the Defendants, rather than the DOC Ombudsman, have

challenged the scope of the subpoena. Moreover, the subpoena issued by the Plaintiffs

commands the DOC Ombudsman to appear for a deposition and to produce documents in Indianapolis, Indiana.  Regarding this latter issue, courts in this district have routinely held that the district where compliance is required under Rule 45 is governed by "the place where delivery of the subpoenaed documents is required." *See, e.g., Lymon v. UAW Local Union #2209*, No. 1:20-cv-169-HAB-SLC, 2021 WL 5810332, at *1 (N.D. Ind. Dec. 7, 2021). Based on this, the court for the district where compliance is required would be the United States District Court for the Southern District of Indiana. If a motion to quash a subpoena or a motion to compel compliance with a subpoena is filed in a court other than a court for the district where compliance is required, that court typically does not have jurisdiction to rule on the motion. *Axis Insurance Co.*, 2021 WL 2910814, at *11  (internal citation omitted); *Agri-Labs Holdings, LLC v. Taplogic, LLC*, No. 1:15-cv-26-RLM-SLC, 2015 WL 13655779, at *1 (N.D. Ind. Oct. 20, 2015). Accordingly, this court would typically not have jurisdiction to rule on a motion for modification of subpoena that commands compliance in Indianapolis, Indiana.

However, courts in this circuit have addressed similar issues and found that it is proper for the court where the action is pending to consider a nonparty subpoena as part of a motion for protective order under certain circumstances. First, courts have found that a party may challenge a subpoena issued to a non-party "[w]here a battle over the subpoenas is focused on a clash of interests between the parties . . . ." *Old Nat'l Bank, N.A. v. Wendler*, No. 321CV00104TWPMPB, 2021 WL 5029522, at *2 (S.D. Ind. Sept. 29, 2021) (quoting *Noble Roman's, Inc. v. Hattenhauer Distributing Co.*, No. 1:14-cv-01734-WTL-DML (S.D. Ind. Feb. 25, 2016) (Docket No. 129 at ECF p. 2)). As such, a party may

seek a protective order under Rule 26 "where the [non-party] has not challenged the subpoena[] and apparently is content to accede to whatever ruling is made by a court based on arguments raised by [the] party." *Id.* In that instance, "consideration of a motion for protective order would not interfere with Rule 45 procedures." *Id.* This authority is especially pertinent to the instant cases because, even if the DOC Ombudsman filed a nonparty challenge to the subpoena, the Ombudsman would do so via counsel from the OAG, who is also counsel for the Defendants. *See* Ind. Code 4-6-2-1.5(a). For these reasons, this Court's consideration of Defendants' instant motion is appropriate.

Turning to the merits of Defendants' instant motion, Plaintiffs' deposition notice to the DOC Ombudsman under Rule 30(b)(6) contains six topics. While Defendants do not object to deposition topic 1, Defendants do object to deposition topics 2-6, contending that the topics improperly seek merits-based discovery, are otherwise irrelevant, and seek communications between individuals and the DOC Ombudsman that are considered privileged under Indiana law. Deposition topics 2, 5, and 6 primarily seek information regarding contacts between individuals and the DOC Ombudsman about grievance difficulties. Deposition topics 3 and 4 primarily seek information regarding contacts between the DOC Ombudsman and other persons regarding prisoners being placed into cells with unconstitutional conditions. Plaintiffs' subpoena also includes RFPs for five categories of documents. Defendants object to the production of these documents as they correspond directly to deposition topics 2-6.

    1.    **Relevance Objections**

    a.  **Deposition Topic 2 and RFP 1**

Deposition topic 2 and RFP 1 seek information about correspondence between the Plaintiffs and the DOC Ombudsman, specifically:

> **Deposition Topic 2/RFP 1:** "All contacts from, and your responses to, the [the Plaintiffs] in 2020 or 2021 to the extent the contacts concern or mention their difficulties in filing or pursuing grievances or the fact that they were placed in cells without lights and/or with windows obstructed by metal plates."

Defendants do not object to discussion or production of Plaintiffs' contacts with the DOC Ombudsman concerning difficulties in filing or filing or pursuing grievances related to the allegations to their complaints. However, Defendants do object to these requests to the extent they concern contacts between the Plaintiffs and the DOC Ombudsman regarding cell conditions, contending that such discovery is premature merits discovery. Plaintiffs contend that this discovery is relevant because it is possible that in complaining about their cell conditions to the DOC Ombudsman, the plaintiffs also stated that they had filed a grievance. Plaintiffs further contend that this discovery is otherwise relevant because, if the DOC Ombudsman was able to receive Plaintiffs' complaints about cell conditions, it supports Plaintiffs' argument that they attempted to file grievances and were reaching out to whomever they could, only to be thwarted by prison staff in the grievance process.

It is true that Plaintiffs generally cannot obtain discovery regarding contacts between the DOC Ombudsman and Plaintiffs regarding the fact that they were placed in cells without lights and/or with windows obstructed by metal plates, as this

discovery pertains to the merits of Plaintiffs' complaints. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). ("We emphasize that in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved.") However, courts may still allow merits discovery in "exceptional cases," such as when "the exhaustion issue and the merits issue share common facts." *Id.* Here, Plaintiffs have not presented any argument suggesting that the exhaustion issue and the Plaintiffs' issues on the merits overlap such that Plaintiffs may obtain discovery regarding contacts that discuss only cell conditions. *Id.* (allowing discovery regarding the plaintiff's arm injury when the plaintiff also alleged that this injury prevented him being able to file a grievance).

Yet it appears that the parties' dispute as to this request mainly centers on correspondence with the DOC Ombudsman that includes both topics—cell conditions and difficulties with grievances. On this point, to the extent that Plaintiffs' contact to the DOC Ombudsman alleges both issues—cell conditions as well as an attempt to file a grievance about cell conditions—this is discoverable under the plain language of the first portion of Plaintiffs' request.  While this discovery will undoubtedly allow for Plaintiffs to obtain some discovery pertaining to their contacts with the Ombudsman regarding cell conditions[3], Defendants have not shown that the potential harm occasioned by this discovery outweighs the ordinary presumption favoring broad

---

[3] To the extent that discovery regarding cell conditions will be disclosed as part of this discovery regarding exhaustion of grievance remedies, Defendants may request that the cell condition information be excluded from any potential *Pavey* hearing.

disclosure. *Close Armstrong LLC*, 2021 WL 1207592, at *2. This approach also appropriately errs on the side of permissive discovery. *Axis Insurance Co.*, 2021 WL 2910814, at *10.

Accordingly, Defendants' motion is **GRANTED** as to DOC Ombudsman topic 2 to the extent that it seeks discovery of Plaintiffs' contacts to the DOC Ombudsman that only discuss cell conditions but is otherwise denied to the extent a contact discusses both grievance difficulties and cell conditions.

### b.  Deposition Topics 5 and 6; RFPs 4 and 5

Deposition topics 5 and 6 and corresponding RFPs 4 and 5 seek information concerning contacts between the DOC Ombudsman and other individuals concerning Miami prisoners who failed to receive a response to a grievance that they had filed:

**Deposition Topic 5/RFP 4:** "All contacts from any prisoners at Miami Correctional Facility in 2020 and 2021 where the prisoners state that they failed to receive responses to grievances that they had filed, and all responses that you made to the contacts."

**Deposition Topic 6/RFP 5:** "All communications between your office and employees or agents of the Indiana Department of Correction concerning contacts that your had with prisoners at Miami Correctional Facility in 2020 and 2021 concerning the prisoners failing to receive responses to grievances that they had filed."

Defendants contend that this information is not relevant because, even if the Plaintiffs timely filed grievances and did not receive a timely response, they were still able, and required, to appeal their grievance pursuant to Miami's grievance process. Accordingly, Defendants contend that these topics should be barred from inquiry or, if some inquiry is permitted, it should be limited to communications about contacts with the Plaintiffs regarding grievances filed about the allegations in their complaints.

Plaintiffs, however, explained that the information sought is relevant because it may show that numerous prisoners complained of deficiencies in the grievance process at Miami, which supports arguments made by Plaintiffs that they filed grievances that were never answered.

In response to Plaintiffs' relevancy explanations, Defendants again have failed to explain why discovery beyond the experience of the Plaintiffs is not relevant or proportional, especially considering that Defendants have raised exhaustion defenses for 26 of the 27 Plaintiffs who are still incarcerated in these consolidated cases. *See id.* While it is true that Miami's grievance policy requires inmates to appeal grievances even after failing to receive a response—which may impact the persuasiveness of the discovery obtained—this does not change that the discovery sought is relevant to whether the grievance process was available, and proportional to the needs of the 26 Plaintiffs. Without more, Defendants' motion is **DENIED** as to these requests.

### c. Deposition Topics 3 and 4; RFPs 2 and 3

Deposition topics 3 and 4, and RFPs 2 and 3, seek information concerning contacts between individuals and the DOC Ombudsman concerning dark cells:

**Deposition Topic 3/RFP 2**: "All contacts from any prisoners at Miami Correctional Facility in 2020 and 2021 concerning the prisoners being placed into cells with no working lights and/or with windows that had been broken and covered by metal plates, and all responses that your office made to those contacts."

**Deposition Topic 4/RFP 3:** "Any communications between your office and employees or agents of the Indiana Department of Correction concerning prisoners at Miami Correctional Facility in 2020 and 2021 as to the prisoners being placed into cells with no working lights and/or with windows that had been broken and covered by metal plates."

In the 26 cases where Defendant have raised an exhaustion defense, discovery pertaining to the merits of Plaintiffs' complaints is premature. *Pavey*, 544 F.3d at 742. Plaintiffs, however, contend this information is still relevant in the cases where an exhaustion defense has not been raised. Defendants object to the proportionality of the request as to these Plaintiffs, contending that it imposes an undue burden to require a witness to inform herself of these complaints when "Mr. Blanchard's case is about Mr. Blanchard's cell during a defined 33-day period, what the Defendants knew about that cell during that time, and what they did in response to that knowledge." Yet, in making this argument, Defendants provide no further explanation as to why these requests cause an undue burden. *See Autotech Techs.*, 235 F.R.D. at 440 ("In the context of a motion for protective order, as in all others, the *ipse dixit* of counsel will not suffice.") Moreover, since the parties briefed the instant motion, three more cases have been filed where Defendants have not raised an exhaustion defense because these inmates are no longer incarcerated.

Notably, the Court may also limit discovery on its own if discovery fails to meet the limits of Rule 26(b)(2). Here, the discovery sought through these requests will only apply, at this time, to four of the thirty Plaintiffs in these consolidated actions. Accordingly, with only four Plaintiffs proceeding on the merits, the importance of discovery beyond the experiences of the individual Plaintiffs is not as significant. But the discovery efforts of these four Plaintiffs should not be wholly hindered. Accordingly, these four Plaintiffs may obtain discovery regarding contacts between Miami prisoners and the DOC Ombudsman regarding prisoners being placed in cells

with no working lights and/or with windows that had been broken and covered by metal plates, but only during the timeframes in which these four Plaintiffs were confined in such cells. This limitation is without prejudice. Other Plaintiffs may seek additional discovery based on the outcome of Defendants' exhaustion defense raised in those actions. Based on the foregoing, Defendants' instant motion is **GRANTED IN PART** as to these requests, with the requested discovery limited as outlined above.

## 2.   DOC Ombudsman Privilege

Defendants also contend that, even if Plaintiffs' discovery from the DOC Ombudsman is considered relevant, communications between the DOC Ombudsman and any individuals other than the Plaintiffs should still be barred from inquiry, as such communications are considered privileged under Indiana law.

The DOC Ombudsman Bureau is separate from the DOC and is tasked with "investigat[ing] and resolv[ing] complaints that the department of correction endangered the health and safety of any person, or that the department of correction violated specific laws, rules, or written policies." Ind. Code § 4-13-1.2-5(a). The DOC Ombudsman's decision to investigate or resolve complaints is discretionary, and "[e]xcept as necessary to investigate and resolve a complaint, [the DOC Ombudsman shall] ensure that the identity of a complainant will not be disclosed . . . ." Ind. Code § 4-13-1.2-7(a)(3). Moreover, "[i]f the ombudsman does not investigate a complaint, the ombudsman shall [still] notify the complainant of the decision not to investigate and the reasons for the decision." Ind. Code § 4-13-1.2-5(c). Notably, Indiana Code § 4-13-

1.2-7(b) further provides that "[t]he correspondence and communication between the [DOC] ombudsman and any person is a privileged communication."

Rule 26(b)(1) provides that a party may discover any relevant, nonprivileged matter that is proportional to the party's needs in the case. Federal Rule of Evidence 501 provides the framework to determine whether discovery material is considered privileged. First, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. But in cases involving federal claims, the federal common law of privilege governs. *Mattice v. Mem'l Hosp. of S. Bend*, 203 F.R.D. 381, 384 (N.D. Ind. 2001) (citing *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981)). Here, as Plaintiffs assert federal claims under § 1983, federal common law privileges apply. Accordingly, the Court is not obliged to recognize a state law privilege. *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB-PRC, 2011 WL 1740154, at *6 (N.D. Ind. May 5, 2011).

Yet this does not mean that the Court cannot recognize the state law privilege in the context of these claims, as a "strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *See Memorial Hosp.*, 664 F.2d at 1061 (internal citations omitted). There are two fundamental principles when considering whether a state law privilege should apply in federal proceedings alleging a federal cause of action. "First, because evidentiary privileges operate to exclude the relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *Id.*

(internal citation omitted). "Second . . . it is important to take into account the particular factual circumstances of the case in which the issue arises." *Id.* In doing so, "[t]he court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Id.* at 1061-62 (internal citation and punctuation omitted). Finally, "[a] party declining to produce discovery on the grounds that it is privileged has the burden of establishing the existence of the privilege as well as its applicability in the particular situation." *Szany v. Garcia*, No. 2:17-CV-74-JTM-PRC, 2018 WL 6332998, at *2 (N.D. Ind. Dec. 4, 2018) (quoting *Scott v. City of Peoria*, 280 F.R.D. 419, 421-22 (C.D. Ill. 2011)).

Defendants argue that the Court should recognize the DOC Ombudsman privilege in this case because the privilege encourages inmates, prison employees, and other individuals to be forthcoming in communications with the DOC Ombudsman without fear of retaliation. As such, Defendants contend that failure to recognize the privilege in this action "will discourage the frank communications that could lead to remediation of problems without Court intervention . . . ." [DE 55 at 9]. In making this argument, Defendants also point to the attorney-client privilege, which also has policy goals of full and frank communication.

Plaintiffs, however, contend that the Court should not recognize this privilege because the overall communication process between inmates and the DOC Ombudsman is not confidential or for the purpose of obtaining legal advice, disputing Defendants' analogy to attorney-client privilege. Plaintiffs assert that many

communications with the DOC Ombudsman are subject to direct review by the DOC and that prisoners often contact the Ombudsman via tablet, which is not a confidential process. Plaintiffs further maintain that when individuals contact the DOC Ombudsman, they are asking the DOC Ombudsman to intervene and resolve an issue, and that, through this resolution process, it is expected that certain information will be released to address the issue. Finally, Plaintiffs contend that any concerns raised by Defendant that disclosure of these contacts will impact full and frank communication with the Ombudsman is alleviated by Plaintiffs' offer to allow the DOC Ombudsman to redact identifying information prior to disclosure.

Defendants have satisfied the first inquiry by showing that communications and correspondence with the DOC Ombudsman are considered privileged under Indiana law. *Szany v. Garcia*, No. 2:17-CV-74-JTM-PRC, 2018 WL 6332998, at *2. However, Defendants have not met their burden to show that the privilege should be recognized as to the entirety of these communications based upon the circumstances of the instant actions, especially considering Plaintiffs' amenability to redaction of identifying information. *See Memorial Hosp.*, 664 F.2d at 1061. Defendants contend that the purpose of the privilege is so that individuals can communicate with the Ombudsman without fear of retaliation. However, in the instant actions, Plaintiffs are seeking contacts with the Ombudsman that occurred years ago, and Plaintiffs have also agreed that Defendants may redact identifying information prior to disclosure. In response to Plaintiff's offer to redact, Defendants simply contend that redaction is not sufficient because the statute makes the entirety of the communication privileged. Defendants'

arguments also ignore that such privileges, when recognized, must be narrowly construed. Given these circumstances, Defendants have not demonstrated how failure to recognize the privilege in this action will create a chilling effect on the Ombudsman process. Without more, Defendants have not met their burden to show that the Court should recognize the DOC Ombudsman privilege for the entirety of the communications in this situation.

Accordingly, Defendants' motion, to the extent it contends that all contacts between the DOC Ombudsman and nonparties should be shielded from disclosure, is **DENIED**. As Plaintiffs are amenable to redaction of identifying information, however, discovery from the DOC Ombudsman that includes correspondence with nonparties shall have identifying information redacted prior to its disclosure.

## IV.  CONCLUSION

Based on the foregoing, Defendants' Motion for Protective Order and Modification of Subpoena is **GRANTED IN PART** and **DENIED IN PART** [DE 54] as follows:

- **GRANTED** as to DOC Deposition Topics 1, 4, and 5;

- **DENIED** as to DOC Deposition Topics 2, 3, and 6, and DOC RFP 1; and

- **GRANTED IN PART AND DENIED IN PART** as to the discovery sought from the DOC Ombudsman. The discovery produced by the DOC Ombudsman shall be **LIMITED** as outlined in this order, with identifying information pertaining to any nonparty redacted.

**SO ORDERED** this 24th day of August 2022.

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge