**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| JEREMY BLANCHARD, | CASE NO. 3:21-CV-160-RLM-MGG |
| JAKE PRISCAL, | 3:22-CV-165-RLM-MGG |
| WILLIAM ANDERSON, | 3:22-CV-286-RLM-MGG |
| DAMION PRYOR, | 3:22-CV-582-RLM-MGG |
| | |
| Plaintiff, | |
| | |
| v. | |
| | |
| WILLIAM HYATTE, et al., | |
| | |
| Defendants. | |

**OPINION AND ORDER**

Pending and ripe before the Court are three motions pertaining to a discovery dispute in the above-captioned consolidated cases: (1) Defendants' Motion for Protective Order filed in *Blanchard v. Hyatte*, 3:21-cv-160-RLM-MGG; (2) Plaintiff Jeremy Blanchard's Motion to Submit Supplemental Information in Opposition to Defendants' Motion for Protective Order filed in 3:21-cv-160-RLM-MGG; and (3) Plaintiff Jake Priscal's Motion to Compel Inspection filed in 3:22-cv-165-RLM-MGG. For the reasons discussed below, Plaintiff Blanchard's Motion to Submit Supplemental Information is **GRANTED** [DE 67 in 3:21-cv-160-RLM-MGG], Defendants' Motion for Protective Order is **DENIED** [DE 61 in 3:21-cv-160-RLM-MGG], and Plaintiff Priscal's Motion to Compel Inspection is **GRANTED** [DE 12 in 3:22-cv-165-RLM-MGG].

## I.      Relevant Background

Approximately thirty inmates, through counsel from the American Civil Liberties Union ("ACLU"), have filed actions alleging that they were subjected to unconstitutional conditions in the restrictive housing unit ("RHU") at Miami Correctional Facility ("Miami") in Bunker Hill, Indiana. The first action was filed on March 5, 2021, on behalf of Jeremy Blanchard. Plaintiff Blanchard alleged that he was placed in an RHU cell with near-continuous darkness from September 3, 2020, to October 5, 2020. [*See* DE 1 at 6, ¶44 in 3:21-cv-160-RLM-MGG]. The ACLU filed twenty-nine more cases alleging similar conditions over the following eighteen months. Accordingly, on November 16, 2021, the Court issued an order consolidating these cases for purposes of discovery and all other non-dispositive pretrial matters. This order also established deadlines for Defendants to raise an affirmative defense alleging a plaintiff's failure to exhaust available grievance remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Defendants have since raised this affirmative defense in twenty-six of the thirty consolidated cases.

Notably, Defendants did not raise this affirmative defense in Plaintiff Blanchard's case. Nor did Defendants raise this affirmative defense in three other cases filed a year after Blanchard's case: *Jake Priscal v. Hyatte et al.*, 3:22-cv-165-RLM-MGG, filed on March 1, 2022; *William Anderson v. Hyatte et al.*, 3:22-cv-286-RLM-MGG, filed on April 11, 2022; and *Damion Pryor v. Hyatte et al.*, 3:22-cv-582-RLM-MGG, filed on July 25, 2022. Plaintiff Jake Priscal alleged that, for at least thirty days starting in December 2020, he was "held in a cell with a blocked window, no light, and dangerous and filthy

conditions, [which] violated [his] Eighth Amendment rights." [DE 1 at 6, ¶42 in 3:22-cv-165-RLM-MGG]. Plaintiff William Anderson contended that he was "held in darkness in a cell with exposed electrical wires, [which] violated [his] Eighth Amendment rights" from March 12, 2021, to March 19, 2021. [DE 1 at 5, ¶36]. Finally, Plaintiff Damion Pryor alleged that Defendants allowed him to be "held in darkness in a cell with exposed electrical wires" for approximately sixty days starting on August 28, 2020. [DE 1 at 6, ¶42 in 3:22-cv-582-RLM-MGG].

With these four cases able to proceed on the merits, the Court entered scheduling orders in accordance with Fed. R. Civ. P. 16(b) to direct the conduct of merits discovery and to set applicable case management deadlines. [*See* DE 40, DE 46, DE 50, DE 71, and DE 76 in 3:21-cv-160-RLM-MGG; DE 10 and DE 16 in 3:22-cv-165-RLM-MGG; DE 12 and DE 14 in 3:22-cv-286-RLM-MGG; and DE 13 and DE 16 in 3:22-cv-582-RLM-MGG].

On August 5, 2021—before these three later cases were filed—Plaintiff Jeremy Blanchard propounded various discovery requests pertaining to the merits of his claims. This discovery consisted of (1) requests for production of documents ("RFPs"); (2) a request for inspection of property; and (3) interrogatory requests. Defendants objected to the scope of certain RFPs and interrogatories as unreasonable. Defendants also objected to the request for physical inspection as low in probative value and overly burdensome. The parties met and conferred via telephone on February 25, 2022, but they were unable to resolve all of Defendants' objections. [*See* DE 61 at 5, ¶9]. Defendants accordingly filed the instant Motion for Protective Order on March 7, 2022, seeking an order that limits the scope of certain RFPs and interrogatory requests and

that forbids Plaintiffs' counsel or expert witness from conducting a physical site inspection at Miami. Plaintiffs filed their response on March 17, 2022. This motion became ripe on March 24, 2022, when Defendants filed their reply.

As stated, at the time of this dispute, Blanchard's case was the only consolidated case with no exhaustion defense. However, after Defendants filed the instant motion for protective order in Blanchard's case, the ACLU filed cases on behalf of former inmates Jake Priscal, William Anderson, and Damion Pryor. As these individuals were no longer incarcerated, their cases could also proceed with merits discovery. Thus, in light of these new cases, Blanchard filed a Motion to Submit Supplemental Information on April 20, 2022. Through this motion, Blanchard requested that the Court consider the circumstances of these three newly filed cases when ruling on Defendants' Motion for Protective Order. This motion became ripe on May 4, 2022, with no response filed.

While these motions were pending in Blanchard's case, Plaintiff Jake Priscal propounded RFPs and a request for inspection of property akin to those propounded by Blanchard. Defendants objected to Priscal's RFPs and request for physical inspection for the same reasons they objected to Blanchard's requests. Priscal then filed a Motion to Compel Physical Inspection on August 22, 2022. Defendants filed their response to Priscal's motion on September 6, 2022. This motion became ripe on September 12, 2022, when Priscal filed his reply.

With these three motions pending, Plaintiffs Anderson and Pryor have served only limited discovery requests to conserve the parties' resources until the instant

discovery dispute has been resolved by the Court. [*See* DE 77 in 3:21-cv-160-RLM-MGG].

II.     **Legal Standard**

Fed. R. Civ. P. 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Relevancy under Fed. R. Civ. P. 26(b)(1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Proportionality is determined by considering "the importance of the issues at stake in the litigation, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Determining "[p]roportionality, like other concepts, requires a common sense and experiential assessment." *Todd v. Ocwen Loan Servicing, Inc.*, No. 219CV00085JMSDLP, 2020 WL 1328640, at *3 (S.D. Ind. Jan. 30, 2020).

When a responding party withholds discoverable information responsive to a party's discovery requests, a motion to compel discovery is allowed. Fed. R. Civ. P. 37(a)(3)–(4). Likewise, any person from whom discovery is sought may, for good cause shown, move for a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c).

Moreover, a protective order may issue if requested discovery does not meet the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b) advisory committee note to 1983 amendment (stating "[t]he grounds mentioned in the amended rule for limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c) . . . ."). *See also* Trupp v. Roche Diagnostics Corp.*, No. 118CV02587SEBDLP, 2019 WL 2250584 (S.D. Ind. May 24, 2019) ("A court may issue a protective order, on motion or its own initiative, to limit discovery if it is outside the scope permitted by Rule 26(b)(1).")

The party seeking discovery generally bears the burden of proving that the discovery it is seeking is relevant and proportional to the needs of the case. *Est. of Logan v. City of S. Bend*, No. 3:19-CV-495-DRL-MGG, 2021 WL 389412 (N.D. Ind. Feb. 3, 2021) (internal citations omitted). Conversely, "[t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Sanchez v. City of Fort Wayne*, No. 118CV00397HABSLC, 2019 WL 6696295, at *2 (N.D. Ind. Dec. 9, 2019). Likewise, the party seeking a protective order bears the burden of showing that good cause exists by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Ball Corp. v. Air Tech of Michigan, Inc.*, 329 F.R.D. 599, 603 (N.D. Ind. 2019) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S. Ct. 2193, 68 L.Ed.2d 693 (1991)).

Ultimately, the Court has broad discretion regarding discovery matters and must "independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L.Ed.2d 17 (1984) ("Rule 26(c)

confers broad discretion on the trial court to determine when a protective order is

appropriate and what degree of protection is required.").

III.   **Discussion**

    A.      **Plaintiff Blanchard's Motion to Submit Supplemental Information**

As a preliminary matter, the Court must address Plaintiff Jeremy Blanchard's

Motion to Submit Supplemental Information in Opposition to Defendants' Motion for

Protective Order. Through this motion, Blanchard explains that, at the time Defendants

filed their Motion for Protective Order, his case was the only consolidated case able to

proceed on the merits. Accordingly, as filed, Defendants' motion seeks an order limiting

the scope of discovery to information about only Blanchard, his cell, and the timeframe

he was housed in it. However, since Defendants filed the instant motion, Jake Priscal,

William Anderson, and Damion Pryor—former inmates who are no longer subject to

PLRA exhaustion requirements—also filed cases alleging that they were subjected to

unconstitutional conditions in the RHU at Miami. These cases have since been

consolidated with Blanchard's case. Accordingly, Blanchard requests that the Court

consider the circumstances and timeframe of these three additional Plaintiffs[1] when

determining the appropriate scope of the discovery requests originally propounded by

Blanchard.

---

[1] Blanchard's supplemental motion only specifically mentions Plaintiffs Priscal and Anderson, as Pryor's case had not been filed at the time of this motion. Pryor's case was filed in July 2022 and has since been consolidated with Blanchard's, Priscal's and Anderson's cases. Accordingly, the Court construes the instant motion as applying to Pryor's case as well.

An adverse party shall have fourteen days after service of a motion in which to serve and file a response. N.D. Ind. L.R. 7-1(d)(3)(A). Failure to file a response within the time prescribed may subject the motion to summary ruling. N.D. Ind. L.R. 7-1(d)(5). As of this date, Defendants have neither responded to the instant motion nor provided any explanation for the inaction. Consequently, the Court can only assume that Blanchard's Motion is unopposed.

The Court has broad discretion with discovery and must determine the proper course of discovery based upon the parties' arguments. *Gile*, 95 F.3d at 496. Considering the pending discovery motions in view of the circumstances of all four Plaintiffs will ensure an efficient and consistent outcome in these consolidated cases. For this reason, and without any objection from Defendants, Blanchard's Motion to Submit Supplemental Information is therefore **GRANTED**. [DE 67 in 3:21-cv-160-RLM-MGG]. Accordingly, the Court construes the instant discovery motions in view of the circumstances of all four Plaintiffs currently proceeding on the merits in these consolidated cases—Plaintiffs Jeremy Blanchard, Jake Priscal, William Anderson, and Damion Pryor.

### B.  Defendants' Motion for Protective Order and Plaintiff Priscal's Motion to Compel

The parties' discovery motions raise two issues: (1) the appropriate scope of RFP Nos. 4, 8, 10, and 12 and Interrogatory Nos. 3, 8, 14-17; and (2) the propriety of a physical inspection of the RHU at Miami. The Court addresses each in turn.

### 1.   RFP Nos. 4, 8, 10, 12 and Interrogatory Nos. 3, 8, 14-17

First, Defendants object to the scope of RFPs Nos. 4, 8, 10, and 12 as well as

Interrogatory Nos. 3, 8, 14-17[2]. RFP No. 4 seeks documents pertaining to conditions of

RHU cells from January 1, 2019, to present:

> <u>Request No. 4</u>: Any and all documents, including photographs, from January 1, 2019 to the present depicting, describing, indicating, or referencing the condition of cells within the restrictive housing unit at Miami Correctional Facility, including but not limited to: a. records or communications indicating cleaning, maintenance, renovation, alteration, or repairs considered, requested, ordered, or conducted; b. reports, records, or communications to or from Department of Correction, Wexford of Indiana, LLC, or Centurion Health staff; c. reports, records, communications, contracts, work orders, schematics, plans, invoices, receipts, or any other documents created by or provided to any third party regarding cleaning, maintenance, renovation, or repair; d. orders, invoices, or receipts for items or services purchased for maintenance, renovation, or repair; e. grievances, whether formal or informal and including appeals filed by inmates and any responses thereto; f. any other communications by or to inmates; g. emails, memoranda, or similar communications to (including copied to) or from William Hyatte and George Payne, Jr. concerning conditions in any of the restrictive housing cells including, but not limited to, communications concerning broken windows, inoperable lights, and the use of metal or other material to cover window openings.

RFP No. 8 seeks photographs or videos depicting the interior of cells within the RHU at

any time prior to Plaintiffs filing their cases:

> <u>Request No. 8</u>: Any and all video or photographs depicting the interior of the cells within the restrictive housing unit in which Mr. Blanchard was held at any time prior to the filing of this litigation.

---

[2] Notably, the parties also dispute whether Defendants' Motion for Protective Order should be construed as objecting to the scope of Plaintiff's Interrogatory nos. 3, 8, and 14-17. Specifically, while Defendants' motion states that Defendants objected to the scope of these interrogatories for the same reasons as they objected to RFP Nos. 4,8, 10, and 12, Defendants' motion does not specifically address these interrogatories as part of its argument. Plaintiff thus contends that any argument as to these interrogatories has been waived. It is true that perfunctory and undeveloped arguments are typically considered waived. *See United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991). However, as Defendants indicate that these interrogatories are objectionable for the same reasons as the instant RFPs, the Court 's ruling as to the scope of the RFPs shall also apply to these interrogatories. This approach is consistent with the mandate to ensure a just and fair outcome of this action under Fed. R. Civ. P. 1 and is within the Court's discretion to determine the proper scope of discovery. *Gile*, 95 F.3d at 496 (7th Cir. 1996).

RFP No. 10 seeks documents regarding the impact of cell conditions on the

physical and mental health of inmates housed in RHU cells from January 1, 2020,

to present:

> <u>Request No. 10</u>: Any documents, including communications, referencing the impact of the condition of the cells on the physical and mental wellbeing of inmates housed within the restrictive housing unit from January 1, 2020 to the present, including, but not limited to:
>> a. reports, records, or communications to or from Department of Correction, Wexford of Indiana, LLC, or Centurion Health staff;
>> b. all requests for healthcare, grievances, grievance appeals, and responses thereto referencing injuries suffered by inmates while housed in the restrictive housing unit, with inmate names redacted as necessary to comply with any obligations imposed by the Health Information Privacy Protection Act or other applicable regulations; and
>> c. all requests for healthcare, grievances, grievance appeals, and responses thereto referencing mental health concerns of inmates while housed in the restrictive housing unit, with inmate names redacted as necessary to comply with any obligations imposed by the Health Information Privacy Protection Act or other applicable regulations.

Finally, RFP No. 12 seeks communications with Indiana Department of Correction staff

from January 1, 2019, to present regarding RHU cells with broken windows or lights

and regarding repairs to these cells:

> <u>Request No. 12</u>: Any and all communications from January 1, 2019, to the present to or from Department of Correction staff:
>> a. Discussing the request, allocation, or expenditure of funds for the maintenance, renovation, or repair of the facility;
>> b. Discussing broken windows in the cells of the restrictive housing unit;
>> c. Discussing the use of sheet metal or other substances to cover broken windows in the cells in the restrictive unit; and
>> d. Discussing broken or inoperable lights in the cells in the restrictive housing unit.

Defendants contend that these discovery requests impermissibly seek merits-

based discovery pertaining to the twenty-six other plaintiffs and are otherwise not

proportional to the needs of the above-captioned four Plaintiffs' cases. Specifically,

Defendants contend that the scope of this discovery is not proportional because (a) it is

of low importance due to its lack of probative value and cumulative nature, (b) the amount in controversy is low, and (c) the discovery poses an undue burden. Defendants thus seek an order limiting these RFPs and interrogatories "insomuch as they seek documents that are *not* related [the four Plaintiffs], [their] cell[s], or the time period [they were] in [their] cell[s] as not proportional to the needs of the case." [DE 61 at 8]. Plaintiffs, however, contend that these requests do not solely seek merits discovery for the other twenty-six plaintiffs and are otherwise proportional to elements of their claims and to certain defenses raised.

Substantive law provides context for the parties' arguments. Under the Eighth Amendment, prison officials must "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, L.Ed.2d 811 (1994). As such, the Eighth Amendment prohibits confinement conditions that deny inmates "the minimal civilized measures of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citation omitted).

To show that prison conditions violate the Eighth Amendment, an inmate must prove facts satisfying "both an objective and subjective component." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018). Under the objective component, an inmate must show that prison conditions were sufficiently serious such "that they deny the inmate the minimal civilized measure of life's necessities," and created "an excessive risk to the inmate's health and safety." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citations and quotations omitted). Under the subjective component, an inmate

prove that prison officials "acted with deliberate indifference the inmate's health or safety." *Farmer*, 511 U.S. at 832. "Deliberate indifference" means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotations omitted). Put another way, an inmate must prove that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (quotation marks omitted).

### a.  Importance of the Discovery in Resolving the Issues

The Court first considers Defendants' arguments that the importance of this discovery is low and that it impermissibly seeks merits discovery pertaining to the other twenty-six plaintiffs. These arguments primarily center on Defendants' conception that, for these four Plaintiffs to prevail on their claims, they need only to "demonstrate that [their] cell had the alleged conditions at time [they were] in it, and that the conditions were unconstitutional." [DE 61 at 8]. This contention is correct as to the objective component of Plaintiffs' Eighth Amendment claims. However, Plaintiffs explain that the information sought in these requests is beneficial to the subjective component of their claims. Plaintiffs explain that the proposed discovery will provide evidence as to Defendants' knowledge of cell conditions and Defendants' decision-

making based upon this knowledge. Plaintiffs also contend that the discovery is relevant to their claims for punitive damages, which are also based upon Defendants' state of mind.

Moreover, Plaintiffs contend that Defendants themselves have made widespread issues with RHU cell conditions and remedial measures important to their claims. Specifically, Plaintiffs state that certain discovery responses from Defendants suggest that Defendants had no choice but to place Plaintiffs in cells without light. Plaintiffs first refer to Defendant Payne's[3] response to Interrogatory No. 4, which provides that: "[Mr. Blanchard] was placed in a cell with a steel plate as a result of prior destruction from offender(s) bursting out the window. No other cell was available.") Next, as to remedial measures in the RHU, Plaintiffs refer to Defendant Payne's response to Interrogatory No. 9, which provides that: "The plates of steel were used due to the inability to purchase replacement glass in a timely manner to replace these windows. The offenders were damaging the windows, cell windows, light fixtures, and intercom speakers faster than they could be repaired or replaced."

As an initial matter, Defendants' conception of the scope of Plaintiffs' claims fails to address the subjective component of Eighth Amendment claims. And more importantly, Defendants' discovery responses plainly raise issues beyond the individual Plaintiffs' cells and beyond the discrete, individual timeframes Plaintiffs were housed in those cells. Accordingly, the Court cannot find, as a general matter, that

---

[3] Defendant George Payne, Jr. is the Deputy Warden at Miami.

any discovery beyond Plaintiffs' cells and the time they were in those cells is "not

important" in resolving the issues. Nor can the Court find that other discovery sought

through these RFPs and interrogatories "will not help [Plaintiffs] prove [their] case."

[DE 61 at 8].

Moreover, Defendants have also contended that this discovery is not important

because they have already produced documents that could go to Defendants'

knowledge of widespread issues in the RHU and their decision-making in light of those

issues. Specifically, Defendants reference two documents [DE 61-6 and DE 61-7] that

have been produced to contend that the instant discovery requests are cumulative. The

first document [DE 61-6] is a two-page, undated chart listing various cell numbers and

their deficiencies. Likewise, the second document [DE 61-7] is another two-page chart

dated 3/26/21 listing RHU cells without lights.

It is true that these four pages of documents contain information that may be

duplicative or cumulative of information in other documents sought through the

proposed discovery. Yet, as contended by Plaintiffs, "Federal Rule of Civil Procedure

Rule 26 prohibits 'unreasonably cumulative or duplicative' discovery, not merely

'duplicative discovery.'" *Walsh Constr. Co. v. Chi. Explosive Servs., LLC*, No. 2:14-CV-84-

RL-PRC, 2016 WL 3520190, at *2 (N.D. Ind. June 28, 2016). Given the cursory nature of

the two previously produced documents, the Court cannot find that Plaintiffs' proposed

discovery is "unreasonably cumulative and duplicative" of what has been produced.

Fed. R. Civ. 26(b)(2)(C)(i).

14

### b. Amount in Controversy

Defendants also contend that this discovery is not proportional because the amount in controversy is low. Specifically, Defendants explain that discovery thus far has shown that there is no indication of "physical injury sufficient to overcome the Prison Litigation Reform Act's bar on collecting damages for mental and emotional injuries absent physical injury." [DE 61 at 9]. In response, Plaintiffs contend that Mr. Blanchard has alleged physical injury and that the PLRA has not barred recovery in similar cases, citing to *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2018), *Isby-Israel v. Lemmon*, No. 2:12-cv-00116-JMS-MJD (S.D. Ind. 2018), and *Aref v. Lynch*, 833 F.3d 242, 264-65 (D.C. Cir. 2016). Defendants do not dispute or otherwise address this argument on reply.

Given the limited amount of discovery that has been conducted in these cases, the Court declines to assume that Blanchard—or the other three merits Plaintiffs—have not shown physical injury sufficient to obtain an award of damages. Accordingly, without more, the Court cannot find that Defendants' perceived value of the case makes the limitations requested in their motion appropriate at this time.

### c. Undue Burden

Finally, Defendants contend that scope of Plaintiffs' proposed discovery poses an undue burden. As to this, the Court considers whether "the burden or expense of the proposed discovery outweighs is likely benefit." Fed. R. Civ. P. 26(b)(1). Like Defendants' other arguments, Defendants' burden arguments raised in their initial motion are tied to their conception that these cases solely involve the individual cells

occupied by Plaintiffs and the time they were in those cells. Indeed, it is not until their reply that Defendants provide any further explanation of the burden imposed by this discovery. There, Defendants state that responding to Plaintiffs' discovery requests is an undue burden because it would require review of "documents in the IDOC packets of other offenders. . . . and would require the undersigned counsel to effectively perform a privilege and relevance review for documents for nearly thirty of these plaintiffs, even for those plaintiffs in whose cases he has not appeared as counsel." [DE 66 at 3].

Notably, claims raised for the first time on reply are typically deemed waived. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); *see also Lesea, Inc. v. Lesea Broad. Corp.*, No. 3:18CV914-PPS/MGG, 2021 WL 3022918, at *3 (N.D. Ind. July 16, 2021) ("Issues raised for the first time in reply are waived, because the opponent has no opportunity to respond.") Yet even considering the information raised for the first time on reply, it is unavailing. First, this explanation fails to address what counsels' review of other inmate packets entails. Nor does it provide any other factual context for the Court to evaluate the burden of such a review. This is not sufficient. Such "[g]eneral and conclusory objections as to . . . burden are insufficient to exclude discovery of requested information." *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, No. 1:13-CV-00357, 2014 WL 4979394 (N.D. Ind. Oct. 6, 2014) (internal quotation omitted). *See also Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D. Ill. 2006) ("In the context of a motion for protective order, as in all others, the *ipse dixit* of counsel will not suffice.") Without more, the Court cannot find that the

likely benefit of this discovery outweighs any burden or expense such that the limitations requested by Defendants are appropriate.

### d.  Appropriate Scope of RFPs and Interrogatories

Based on the foregoing, the Court cannot find that Defendants have met their burden to show that this discovery should be excluded or limited to the degree requested. *Sanchez*, 2019 WL 6696295, at *2. However, under Rule 26(b)(2) and Rule 26(c), the Court may also limit discovery on its own. *See also Gile*, 95 F.3d at 496 (stating the court must "independently determine the proper course of discovery based upon the arguments of the parties."). Here, the discovery sought through these requests will only apply, at this time, to four of the thirty Plaintiffs in these consolidated actions. These Plaintiffs were placed in RHU cells over a period spanning approximately seven months—from August 2020 to March 2021. Specifically, Pryor was housed in the RHU from August 28, 2020, to October 27, 2020; Blanchard was in the RHU from September 3, 2020, to October 5, 2020; Priscal from December 2020-January 2021; and Anderson from March 12, 2021, to March 19, 2021. As discussed, discovery beyond these Plaintiffs' individual experiences is important to the needs of the Plaintiffs' cases based upon the nature of their Eighth Amendment claims and based upon information conveyed by Defendants in their discovery responses regarding widespread issues in the RHU.

However, the Court cannot find that the timeframe proposed by Plaintiffs in (from January 1, 2019, to present) is proportional when considering that these four Plaintiffs' RHU confinement covers only a seventh month period. Accordingly, the Court hereby limits the timeframe of this discovery to records spanning from August 1,

2020, to March 19, 2021. This limitation allows Plaintiffs to obtain discovery pertaining to the subjective component of their claims as well as to the widespread issues with RHU that have been raised by Defendants. However, this limitation also allows the parties to focus on the general confinement timeframe of these four Plaintiffs. This limitation is without prejudice, and the timeframe may be extended based upon the outcome of the Defendants' exhaustion defenses raised in the other twenty-six consolidated cases.

For the foregoing reasons, Defendants' instant motion for protective order is **DENIED.** [DE 61 in 3:21-cv-160-RLM-MGG]. However, the timeframe of these requests shall be limited as outlined above.

### 2.     Request for Physical Entry and Inspection

Next, the parties dispute the propriety of Plaintiffs conducting a physical inspection at Miami. Under Rule 34, a party may "serve on any other party a request . . . to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon . . . ." Fed. R. Civ. P. 34(a)(2). However, as an inspection of property entails a greater burden and risk than does a production of documents, "[t]he degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection" *Menendez v. Wal-Mart Stores E. L.P.*, No. 1:10-CV-00053, 2012 WL 2155268, at *2 (N.D. Ind. June 13, 2012) (internal citations omitted).

Here, Plaintiffs Blanchard and Priscal request an inspection so that photographs make be taken and so that their expert witness can opine as to "how far below 'the civilized measures of life's necessities'" cell conditions were. [DE 65 at 14, quoting *Farmer*, 511 U.S. at 834]. Defendants contend that the value of a site inspection is outweighed by its burden and dangers. First, as to the value of a site inspection, Defendants contend that the degree to which a proposed site inspection will aid in the search for truth is minimal—or even nonexistent—because the conditions of the cells have changed since Plaintiffs were housed in them. Likewise, Defendants contend that it is unnecessary for the expert witness to inspect the cells because "dark is dark." [DE 61 at 10]. In other words, Defendants contend that, if Plaintiff's expert is knowledgeable of the impact on a person being kept in the dark in one room, then he can opine on the impact of another dark room without seeing it in person. [DE 61 at 10].

Plaintiffs, however, dispute Defendants' contention that a site inspection will not aid in the search for truth. First, Plaintiffs explain that the extent of the darkness in the cells may not be as straightforward as Defendants claim. In support, Plaintiffs reference Defendants' response to Interrogatory No. 6, which states that: "Upon information and belief, light from the dayroom was entering [Mr. Blanchard's] cell through the door window." Next, Plaintiffs contend that although the light fixture and windows have been replaced, Plaintiffs' expert can still approximate the cells' conditions when the window and light were not operational. Plaintiffs also contend that an inspection will allow observation of other relevant cell conditions—such as the cell's size and noise level—and that Defendants' arguments ignore the applicable legal standard considering

19

the "totality of the conditions of confinement," citing to *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013). As to this, Plaintiffs also explain other requests seeking this information have not yielded responsive documents.

Based on this, the Court cannot find that the value of a site inspection is minimal or nonexistent. First, Defendants' argument that "dark is dark" is undermined by their response to Plaintiffs' Interrogatory No 6. It is reasonable for Plaintiffs to seek additional evidence to clarify the extent of darkness in their cells based upon this response. And while cell conditions may have changed since Plaintiffs were housed there, the Court agrees that conditions concerning lighting in the cell can be simulated during an inspection. Likewise, a site inspection will allow Plaintiffs to observe the "totality of the conditions of confinement," especially as Plaintiffs' other discovery requests concerning the cells' arrangements have not produced responsive documents. Finally, the Court is cognizant that there are now four cases proceeding on the merits. As such, each Plaintiff may have been housed in a different cell in the RHU, and the gradation of available light in each cell may vary. Such gradations can only be observed or simulated through a physical inspection of the pertinent cells.

The Court must next consider whether this value is outweighed by the burdens or dangers of such an inspection. Defendants have contended that a site inspection would be unduly burdensome because Miami would be required to suspend normal operations in the RHU and would have to reassign correctional staff to accommodate the inspection. Plaintiffs, however, explain that they offered to schedule the inspection on a date and time most convenient for the facility. Defendants have also contended

that a site inspection would poses a safety risk by reintroducing COVID-19 into the facility. In response, Plaintiffs explain that Miami has already reopened to in-person attorney visits[4] and that Plaintiffs' counsel will abide by any current safety protocols in place on the date of an inspection.

Taken together, the Court cannot find that these burdens or dangers outweigh the value of an inspection such that an outright prohibition is appropriate. Rather, the burden and dangers raised by Defendants are more appropriately addressed through protective measures. Accordingly, Defendants' Motion for Protective Order is **DENIED** to the extent that it seeks an order wholly prohibiting a physical inspection. [DE 61 in 3:21-cv-160-RLM-MGG].  Likewise, Plaintiff Priscal's Motion to Compel Physical Inspection is **GRANTED.** [DE 12 in 3:22-cv-165-RLM-MGG]. However, in an effort to accommodate the concerns raised by Defendants in their Motion for Protective Order, the parties are further **ORDERED** to confer on the appropriate date, time, conduct, and rules for a physical inspection.

IV.    **Conclusion**

For the foregoing reasons,

- Plaintiff Blanchard's Motion to Submit Supplemental Information is **GRANTED** [DE 67 in 3:21-cv-160-RLM-MGG].

- Defendants' Motion for Protective Order is **DENIED** as to the extent of limitations sought for RFP Nos. 4, 8, 10, and 13 and Interrogatory Nos. 3,

---

[4] Specifically, Plaintiffs' counsel indicates that he was able to visit Miami on March 8, 2022.

8, 14-17 [DE 61 in 3:21-cv-160-RLM-MGG]. However, the temporal scope of these requests shall be **LIMITED** to August 1, 2020, to March 19, 2021, as outlined in this Opinion and Order.

- Defendants' Motion for Protective Order is **DENIED** to the extent it seeks an outright prohibition on a physical inspection, and Plaintiff Priscal's Motion to Compel Inspection is **GRANTED** [DE 12 in 3:22-cv-165-RLM-MGG]. However, the parties are **ORDERED** to confer on an appropriate date, time, conduct, and rules for the inspection.

With the Court's ruling on the instant discovery motions, Plaintiff's Unopposed Motion for Status Conference for purposes of discussing the status of discovery in these cases is hereby **DENIED as MOOT**. [DE 77 in 3:21-cv-160-RLM-MGG]. However, the parties may request further status conferences as necessary.

**SO ORDERED** this 10th day of February 2023.


s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge

22