UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEREMY BLANCHARD,

    Plaintiff,

    v.

WILLIAM HYATTE, et al.,

    Defendants.

Case No. 3:21-CV-160-CCB-SJF

**OPINION AND ORDER**

    Before the Court is Defendants' motion for judgment on the pleadings asserting the affirmative defense of qualified immunity for an alleged violation of Plaintiff's Eighth Amendment rights related to the conditions of his confinement at Miami Correctional Facility ("Miami") between September 3, 2020, and October 5, 2020. Based on the applicable law, facts, and arguments, Defendants' motion for judgment on the pleadings will be denied.

**I.   RELEVANT BACKGROUND**

    The facts recounted here come from Plaintiff's complaint and are accepted as true for purposes of this motion with all reasonable inferences drawn in Plaintiff's favor. *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

    On August 18, 2020, Plaintiff was placed in a restrictive housing cell at Miami. The cell, like many in the restrictive housing unit ("RHU"), had a broken window open to the outside and a broken light. The call button was also broken. Plaintiff played no role in damaging the cell or its component parts. Aware of the conditions in the RHU, Defendants responded on September 3, 2020, by placing solid steel plates over the broken windows throughout the unit—including in Plaintiff's cell—but did not remedy the inoperable lights. And they continued assigning inmates to

the damaged cells explaining that no other cells were available and that funds were unavailable to replace the windows.

Once the window in Plaintiff's cell was covered by the steel plate, his only sources of light were the small window in his cell door and the light emanating from his prison-issued tablet. According to Plaintiff, light from both sources was very dim. Light came through the cell door window from the day room area outside his cell. Most of the day, the lights were dim and even when they were brightly lit, very little light filtered into Plaintiff's cell. Plaintiff's tablet provided some light, but only enough to view the tablet screen. These limited light sources combined with his inoperable light left Plaintiff in near-total darkness whenever he was in his cell. Plaintiff only left his cell every 4-5 days for about 15 minutes to shower. Plaintiff was not provided any recreation time while in the RHU. Plaintiff remained in that cell until October 5, 2020.

The darkness affected Plaintiff in several ways. Plaintiff could not see the grievance documents he had to complete to protest his cell conditions. Plaintiff's only option was to complete the grievance forms during a visit to the shower, which he did. Severe anxiety set in for Plaintiff leading him to pace back and forth in his dark cell. He suffered painful bruises and bloody scrapes on his legs from bumping into the stool affixed to the floor. The constant darkness disrupted his internal clock making it difficult for him to sleep and eat regularly. This caused Plaintiff to suffer physical symptoms including headaches, nausea, and lack of energy because of his hypoglycemia. His mental health was also affected. With no history of hallucinations, Plaintiff began hearing voices and sensing things crawling on him in the dark cell.

## II.   ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The court decides such a motion "under the same standard as a motion to dismiss under Rule 12(b)." N. *Ind. Gun & Outdoor Shows, Inc. v. S. Bend,*

163 F.3d 449, 452 (7th Cir. 1998); *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). The court should grant a Rule 12(c) motion "only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Brunt v. Serv. Emps. Int'l Union,* 284 F.3d 715, 718–19 (7th Cir. 2002). Defendants assert they are entitled to judgment on the pleadings because they are qualifiedly immune to Plaintiff's Eighth Amendment conditions of confinement claim.

Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). As an affirmative defense, qualified immunity provides more than a "mere defense to liability," it provides "*immunity from suit*." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Once a defendant raises the defense of qualified immunity, "it becomes the plaintiff's burden to defeat it." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008).

To defeat a qualified immunity defense on a motion for judgment on the pleadings, a plaintiff's "complaint must adequately allege facts that, if true, would constitute a violation of a constitutional right; [and] the case law must be 'clearly established' at the time of the alleged violation, so that a reasonable public official would have know[n] that his conduct was unlawful." *Delgado v. Jones*, 282 F.3d 511, 516 (7th Cir. 2002) (citing *Harlow*, 457 U.S. at 818–19).

**A.     Constitutional Right to Adequate Lighting**

The Eighth Amendment protects against cruel and unusual punishment. To succeed on an Eighth Amendment claim, a plaintiff must establish both an objective and a subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The deprivation of rights "alleged must be, objectively, 'sufficiently serious,' [and] must result in denial of 'the minimal civilized measure of life's

3

necessities.'" *Id.* Additionally, the defendants must have acted with "deliberate indifference" to the inmate's health or safety." *Id.* (quotation and citated omitted). Defendants argue that a prisoner must be deprived of all light—in other words, be plunged into total darkness—to suffer a constitutional violation. In support, Defendants rely on cases of prisoners facing limited light deprivation that did not rise to the level of an Eighth Amendment violation.

In *Wilson v. Schomig*, the prisoner alleged only that his cell lacked operating electrical lights while he was housed there for almost three months. 863 F. Supp. 789, 795 (N.D. Ill. 1994). The court found that the prisoner's inadequate lighting allegations were insufficient to satisfy the Eighth Amendment's objective prong. *Id.* The court stated that further allegations, such as total light deprivation, were needed to establish a constitutional violation. *Id.* In another lighting case, the same court considered whether a prisoner in a cell for 33 days with no lights or electricity, wires hanging out of the walls, a window, an open vision panel in the cell door, and a working light just outside the cell suffered a constitutional deprivation. *Lloyd v. Briley*, No. 05 C 1499, 2007 WL 917385, at *1, *4 (N.D. Ill. Mar. 23, 2007). The court found that the conditions the plaintiff faced did not rise to the level of cruel and unusual punishment because he was not subjected to total darkness and admitted he could read in his cell, if minimally. *Id.* at *6. The court considered the totality of the plaintiff's conditions of confinement in reaching its decision. *Id.*

Other light deprivation cases similarly analyzed the totality of circumstances. In *Hicks v. Lannoye*, the plaintiff failed to meet the objective prong where his cell lacked electricity for about one week; the front of his cell opened to the cell block (except for the bars); the cell block had ceiling lights on 24 hours a day and a fluorescent bulb for 16 hours per day; natural light from the window across the tier from the plaintiff's cell flowed into the cell; the warden arranged repairs to the electrical outage and offered the plaintiff the chance to move; and the plaintiff left his cell regularly for school, meals, recreation time, law library access, and religious services. Case No. 20-CV-505,

2021 WL 2454050, at *3–*4 (E.D. Wis. June 16, 2021). The court said that the record did not show that the plaintiff "spent any significant amount of time in near total darkness." *Id.* at *3.

In *Martin v. Snyder*, the plaintiff was allowed to proceed on a conditions of confinement claim where he alleged that he stayed in a cell without a working light for five months; spent 12–14 hours in near total darkness; suffered eye strain and headaches; could not read or pursue other normal activities; suffered a head injury after falling in his cell because of lack of light; was denied medical treatment for the injury; and had his grievance requests for adequate lighting denied. Case No. 00-C-983, 2002 WL 484911, at *6 (N.D. Ill. Mar. 28, 2002). The court acknowledged that whether inadequate lighting can constitute an Eighth Amendment violation is unsettled in the Seventh Circuit. *Id.* That said, the court concluded "that inadequate lighting can give rise to a constitutional violation under certain circumstances." *Id.* In support, the court relied on the Ninth Circuit's holding that "adequate lighting is one of the fundamental attributes of adequate shelter required by the Eighth Amendment." *Id.* (citing *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996); *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (internal quotations omitted)). The court also referenced *Bono v. Saxbe*, 620 F.2d 609, 617 (7th Cir. 1980) where the Seventh Circuit expressed concern—in dicta—about due process violations when prisoners could not read due to inadequate lighting. *Id.*

Defendants interpret these cases to mean that only cases involving total darkness rise to the level of constitutional violations. It is true that the Seventh Circuit has not defined the full contours of when inadequate lighting, on its own, constitutes an Eighth Amendment violation—when inadequate lighting amounts to a deprivation of minimal civilized measures of life's necessities. *Hicks*, 2021 WL 2454050, at *3; *see also Farmer*, 511 U.S. at 834. At the same time, "[t]he Seventh Circuit has held that where a prison fails to provide adequate ventilation, sanitation, bedding, hygiene materials, and utilities, including hot and cold water, light, heat, and plumbing, it can amount to an Eighth Amendment violation." *Hicks*, 2021 WL 2454050, at *3 (citing *Gillis v. Litscher*, 468

5

F.3d 488, 493 (7th Cir. 2006)). Indeed, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone may not do so." *Gillis*, 468 F.3d at 493.

Therefore, the question of whether light deprivation meets the objective prong of the Eighth Amendment analysis is a factually specific one that does not necessarily turn on whether the inmate faced total darkness. Here, that is especially true. Plaintiff admits that he did not experience complete and total darkness in his RHU cell. But the conditions he faced resemble those in *Martin*, in which the court allowed the plaintiff's Eighth Amendment inadequate lighting claim to proceed because it could not "say with certainty that [the plaintiff] can prove no set of facts to support the allegations in his claim." *Martin*, 2002 WL 484911, at *7. Similarly, this Court cannot find beyond a doubt that Plaintiff has not alleged, and cannot prove any facts, to show a constitutional violation under the Eighth Amendment for inadequate lighting. *See Brunt*, 284 F.3d at 718–19. Nor have Defendants shown that there are no material issues of fact remaining, especially as to whether a combination of the facts and circumstances Plaintiff faced amounts to a deprivation of minimal civilized measures of life's necessities. *See id.*; *see also Farmer*, 511 U.S. at 834.

**B.** **Clearly Established Constitutional Violation**

Government officials are entitled to qualified immunity so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A plaintiff defeats qualified immunity most commonly "by identifying a closely analogous case," and more rarely "by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 723–24 (7th Cir. 2013). Absent controlling precedent, a court may look more broadly to relevant, but nonbinding, caselaw "to determine whether there was such a clear trend in the caselaw that [it can be said] with fair assurance that the recognition of the right by a controlling precedent was merely a

6

question of time." *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000) (internal quotations omitted). Even so, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019). This means courts "analyze whether precedent squarely governs the facts at issue, mindful that [courts] cannot define clearly established law at too high a level of generality." *Strand v. Minchuk*, 910 F.3d 909, 917 (7th Cir. 2018).

Defendants argue that there is no clearly established right to adequate lighting because there is no case analogous to the facts alleged by Plaintiff. Even without any analogous, controlling case, Plaintiff still contends that there is a clearly established right to adequate lighting. Plaintiff directs the Court's attention to *Gillis v. Litscher*, which cites with approval a Tenth Circuit case identifying "light" as one of several "utilities" deemed one of "life's necessities." 468 F.3d at 493 (citing *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state must provide . . . reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (*i.e.*, hot and cold water, light, heat, plumbing).")). The Eastern District of Wisconsin in *Hicks v. Lannoye* then cited *Gillis* favorably for the same proposition before reaching a fact-specific conclusion about the adequacy of lighting for the plaintiff in that case. 2021 WL 2454050, at *3.

As alluded to above, other Seventh Circuit cases have also telegraphed that lighting issues can be cause for constitutional concern. In *Bono v. Saxbe*, the court directed the trial court on remand to consider significant matters including justification for poorly lit cells that precluded prisoners from reading. 620 F.2d at 617. In a footnote that is clearly dicta, the court noted its disagreement "that nearly total darkness or some other extreme lighting is a sine qua non of constitutional concern." *Id.* n.12. Despite Defendants' rejection of the *Bono* dicta, dicta can clearly establish a right in certain cases. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012). Then in *Antonelli v. Sheahan*, the Seventh Circuit considered a prisoner's claim that the lighting in his unit and its day room was so weak that reading hurt his eyes. 81 F.3d 1422, 1433 (7th Cir. 1996). The

7

court remanded the case for determination of whether the lighting was constitutionally inadequate holding that "if the lighting conditions were objectively insufficient, they may have violated the Eighth Amendment." *Id.*

*Wilson v. Schomig* and *Lloyd v. Briley*, discussed above, do not involve circumstances directly analogous to those alleged by Plaintiff but do give some contour to the right to adequate lighting. Defendants rely on these cases to argue that there is only a clearly established right to be free from total, not near-total, darkness. The *Wilson* plaintiff alleged only lack of operating electric lights and nothing more. 863 F. Supp. at 792, 795. The *Lloyd* plaintiff alleged lack of artificial light in his cell, but still had light from a functioning window and a vision panel on his cell door that allowed him to read, at least minimally. 2007 WL 917385, at *6. While both the *Wilson* court and *Lloyd* court *signified* that total darkness would have been a clearly established right, neither reached their conclusion about the clearly established rights related to lighting by comparing the plaintiff's allegations to a "total darkness" standard of any kind. Instead, both courts assessed the totality of facts presented by the plaintiffs before determining that they had no clearly established right to light beyond what was available in their cells. In so doing, both courts left open the possibility that a level of darkness between the facts presented in those cases and total darkness could constitute a clearly established right to adequate lighting. Distinguishable from and more extreme than the facts presented in *Wilson* and *Lloyd*, the totality of facts and circumstances alleged in Plaintiff's complaint fall into the category of near-total darkness for which no analogous case yet exists.

Nevertheless, Plaintiff could still have a clearly established right to be free from the near-total darkness he experienced in the Miami RHU. Plaintiff can identify caselaw beyond the Seventh Circuit and Supreme Court to show that a clear trend in the caselaw give "fair assurance that the recognition of the right by a controlling precedent [is] merely a question of time." *Jacobs*, 215 F.3d at 767. Plaintiff again focuses on the Ninth Circuit's holding in *Hoptowit v. Spellman* linking adequate

8

lighting to the fundamental right of adequate shelter protected by the Eighth Amendment. *See* 753 F.2d at 783; *see also Carney v. Craven*, 40 F. App'x 48, 51 (6th Cir. 2002) (citing *Hoptowit*). In a later case, the Sixth Circuit found an Eighth Amendment violation where "substandard lighting caused eye strain when reading and hindered the prisoner's efforts to clean his cell." *Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017). The *Powell* court even cited the Seventh Circuit's own *Antonelli* finding that deficient lighting making it difficult to read and hurting the prisoner's eyes may violate the Eighth Amendment. *Id.* (citing *Antonelli*, 81 F.3d at 1433). As Plaintiff points out, other cases make similar findings. *See, e.g.*, *Gates v. Cook*, 376 F.3d 323, 342 (7th Cir. 2004); *Tillery v. Owens*, 719 F. Supp. 1256, 1271 (W.D. Pa. 1989), *aff'd* 907 F.2d 418 (3d Cir. 1990); *James v. Cohen*, No. 1:17-01256, 2017 WL 4371548, at *3 (D. S.C. Oct. 3, 2017); *Amaker v. Good*, No. 98 Civ. 3634, 1999 WL 511990, at *7 (S.D.N.Y. July 20, 1999). The facts of these case are admittedly distinguishable from those in Plaintiff's complaint, especially those that find constitutional violations because the lack of light prevented the prisoner from cleaning his cell. Plaintiff makes no such allegations. Yet an inference could be made from his allegations that cleaning his cell would have been difficult, if not impossible, for Plaintiff.

Lastly, these cases, considered together with Seventh Circuit precedent, put wardens and other prison officials on notice that reduced or extremely limited lighting in prison cells could violate the Eighth Amendment. Therefore, this is a situation where a "general constitutional rule already identified in the decisional law" applies with "obvious clarity" to Defendants' conduct as alleged in Plaintiff's complaint, even though that specific conduct "has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotation omitted).

Plaintiff has made serious allegations about the lack of lighting in his RHU cell and the consequences of the near-total darkness he lived in for over a month in 2020. Unlike the plaintiff in *Wilson*, Plaintiff alleges much more than just a lack of electric lights. He alleges that he was

9

subjected to the near total darkness because of the steel-covered window.  He alleges that he could only leave his dark cell every 4 or 5 days for 15 minutes to shower.  He alleges very dim light from the small cell door window; dim light from his tablet; inability to read and prepare grievance documents; newly developed hallucinations; sleep and diet irregularities that resulted in new physical symptoms; and physical injuries from pacing the cell due to the anxiety effect of the darkness.  The near-total darkness Plaintiff endured dramatically affected his health, safety, ability to read, and access to the prison's grievance process.  In other words, the record of extremely limited lighting combined with the effects of living 24 hours a day, almost every day for over a month in near-total darkness persuades this Court no reasonable officer or warden could have thought that placing a prisoner in these egregious circumstances was lawful.  *See Abbott*, ,705 F.3d at 723–24.

### III.   CONCLUSION

For the reasons discussed above, Defendants' motion for judgment on the pleadings is **DENIED**.  [DE 94].

SO ORDERED.

September 4, 2024

                                                                 /s/*Cristal C. Brisco*  
                                                                 CRISTAL C. BRISCO, JUDGE  
                                                                 UNITED STATES DISTRICT COURT